IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

CONNIE J. MAYNARD,

    Plaintiff,

v.                                 CASE NO. 2:07-cv-00559

MICHAEL J. ASTRUE,
Commissioner of Social Security[1],

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDATION**

    This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court is Plaintiff's Motion for Summary Judgment and Defendant's Brief in Support of Judgment on the Pleadings.[2]

---

    [1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

    [2] The court reminds the parties that pursuant to Local Rule of Civil Procedure 9.4(a), the parties need not file motions in support of judgment on the pleadings (or for summary judgment).  Instead, Plaintiff should file "a brief in support of the complaint," while Defendant files "a brief in support of the defendant's decision."  Local Rules of the United States District Court

Plaintiff, Connie J. Maynard (hereinafter referred to as "Claimant"), filed an application for DIB on February 1, 2006, alleging disability as of September 16, 2005, due to arthritis and herniated and bulging discs. (Tr. at 71-73, 77.) The claim was denied initially and upon reconsideration. (Tr. at 41-43, 50-54.) On October 23, 2006, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 39.) The hearing was held on February 20, 2007, before the Honorable Theodore Burock. (Tr. at 213-27.) By decision dated March 13, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-23.) The ALJ's decision became the final decision of the Commissioner on July 6, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 5-7.) On September 11, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

---

for the Southern District of West Virginia, Local Rule of Civil Procedure 9.4(a).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age,

education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic low back syndrome secondary to degenerative joint disease of the lumbar spine. (Tr. at 15.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 17.) As a result, Claimant cannot return to her past relevant work. (Tr. at 21.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as hand packer, file clerk and assembler, which exist in significant numbers in the national economy. (Tr. at 22.) On this basis, benefits were denied. (Tr. at 23.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was fifty-two years old at the time of the administrative hearing. (Tr. at 216.) Claimant completed the eighth grade. (Tr. at 218.) In the past, she worked as a janitor. (Tr. at 225.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

5

On October 17, 2005, Claimant reported to the emergency room with complaints of "backache for a few months." (Tr. at 151.) Claimant reported the development of severe pain in her left leg. An MRI on October 4, 2005, showed mild protrusion of the disc at L3-L4 to the right of the midline. (Tr. at 151.) Nilima R. Bhirud, M.D. diagnosed lumbar radiculopathy and ordered an MRI. (Tr. at 152.) Dr. Bhirud found that Claimant had severe tenderness over the lumbar spine and spasm of the paraspinal muscle. Straight leg raising was positive at 20 degrees on the left and at 60 degrees on the right. (Tr. at 152.)

The record includes the results of the October 17, 2005, MRI ordered by Dr. Bhirud. It showed disc bulges at multiple lumbar levels, including from L2-3 through L5-S1, without evidence of frank disc narrowing or spinal stenosis. There was signal abnormality at the L3-4 vertebral bodies contiguous with the disc spaces including some pathologic enhancement. (Tr. at 156-57.)

Frederick H. Armbrust, M.D., a neurologist, examined Claimant on October 18, 2005, at the request of Dr. Bhirud. Claimant reported she had been laid off from her job about a month ago. Claimant reported substantial decrease in her pain since admission to the hospital the day before. Claimant reported no problems with bowel or bladder dysfunction. Claimant had no tenderness to palpation over the low back region. While seated, straight leg raising and simultaneous hip and knee flexion were tolerated well

without complaint.  Claimant was able to heel and toe walk and was walking independently.  Dr. Armbrust's neurologic examination of the lower extremities failed to show any evidence of lateralizing deficit relative to weakness, reflex asymmetry or sensory loss. Pulses in the lower extremities were somewhat diminished but present.  Dr. Armbrust noted that the MRI showed evidence of degenerative changes involving the L3-L4 interspace and some focal disc protrusion on the right side at the L3-L4 level.  There was no evidence of a herniated disc on the left side of the canal.  Dr. Armbrust's impression was "[l]ow back pain associated with transient radiating left leg pain not related to mechanical intraspinal abnormality." (Tr. at 153.) He recommended continued conservative efforts, including anti-inflammatory medication, physical therapy and progressive increased activity.  Dr. Armbrust did not feel that Claimant required any type of neurosurgical intervention at this time.  (Tr. at 154.)

The record includes treatment notes and other evidence from Claimant's physical therapist.  On November 7, 2005, Thomas L. Stec, PT, CMT wrote to Dr. Bhirud that Claimant was seen on October 26, 2005, for physical therapy evaluation.  Mr. Stec stated that he wished to treat Claimant two to three times per week for four to six weeks.  Claimant reported her back pain had decreased over the past two weeks with treatment.  On examination, lumbar extension was decreased.  Left side gliding was decreased, and the end range

of this movement reproduced right sided pain. (Tr. at 165.) Claimant experienced improvement (Tr. at 164), but on November 21, 2005, called to tell her therapist she could not continue because of the expense (Tr. at 163). On December 6, 2005, Mr. Stec wrote that Claimant received a total of four treatments. At the time of her last visit, Claimant was progressing slowly but improving. She was compliant with her home program. (Tr. at 162.)

On March 14, 2006, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work, reduced by an occasional ability to climb ramps and stairs, balance, stoop, kneel, crouch and crawl, an inability to climb ladders, ropes and scaffolds, and a need to avoid concentrated exposure to extreme cold, vibration and hazards. (Tr. at 172-79.)

The record includes handwritten treatment notes and other evidence from Dr. Bhirud dated June 22, 2004, through March 3, 2006. (Tr. at 180-91.) Claimant underwent x-rays of the lumbar spine on July 28, 2005, which showed degenerative changes of the lumbar spine without evidence for lytic or blastic lesions. There was levocurvature of the upper lumbar spine measuring 14 degrees. (Tr. at 190.) An MRI of the lumbar spine on October 4, 2005, showed mild protrusion of the L3-L4 intervertebral disc posterolaterally to the right of the midline. (Tr. at 189.) On August 17, 2005, Claimant complained of a backache. Claimant

reported that she has numbness in both legs and difficulty bending. (Tr. at 186.)  On September 22, 2005, Claimant reported to Dr. Bhirud that when she drives her car, she has back pain that shoots into her hips and down the back of her legs.  Claimant reported that Motrin helps, but Zanaflex makes her drowsy.  Claimant reported no bowel or bladder problems.  (Tr. at 184-87.)  On October 17, 2005, Claimant reported she developed severe pain in the left leg.  Straight leg raising was positive at twenty degrees on the left and fifty degrees on the right.  (Tr. at 182.)  On January 3, 2006, Claimant reported she was not going to physical therapy anymore.  She did her home exercises.  She reported she was unable to work and planned to apply for disability.  (Tr. at 180.)

Dr. Bhirud completed a Medical Assessment of Ability to do Work Related Activities (Physical) on February 15, 2007, and opined that Claimant could lift seven pounds occasionally and five pounds frequently, that Claimant could stand four hours in an eight-hour workday, and for half an hour without interruption, that Claimant could sit for four to five hours in an eight-hour workday, and for half an hour without interruption, that Claimant should never climb, balance, stoop, crouch, kneel or crawl, and that Claimant has limitations in the ability to push/pull.  (Tr. at 194-97.)

The record includes additional handwritten treatment notes from Dr. Bhirud dated January 9, 2007, and February 12, 2007.  On January 9, 2007, Claimant continued to complain of a backache.

Claimant reported that her back has been bothering her a lot and that she has trouble driving a car. Claimant reported that the pain is worse when she stands and walks. Dr. Bhirud prescribed Lortab. (Tr. at 199.) On February 12, 2007, Claimant reported continued back pain. Dr. Bhirud prescribed Lortab. (Tr. at 198.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in weighing the medical evidence of record and, in particular, failed to afford proper weight to the opinion of Claimant's treating physician, Dr. Bhirud. Claimant further asserts that the medical evidence of record corroborates Claimant's complaints of pain and that she should have been limited to sedentary work. If Claimant were capable of sedentary work, she would meet the requirements for disability under the Medical-Vocational Guidelines, Rule 201.09. (Pl.'s Br. at 5-9.)

The Commissioner argues that the ALJ properly found that Dr. Bhirud's conclusory and unsupported opinion was entitled to little weight. (Def.'s Br. at 9-14.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. <u>See</u> 20 C.F.R. § 404.1527(d)(2) (2007). Nevertheless,

a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2) (2007).  The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2) (2007).  Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational.  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527.  These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors.  Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of

11

determination or decision for the weight we give your treating source's opinion." Id. § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight is given to an examiner than to a non-examiner. Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Section 404.1527(d)(2)(i) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Section 404.1527(d)(3), (4), and (5) adds the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

In his decision, the ALJ explained that he afforded "little weight to the Medical Assessment of Ability to do Work-related Activities (Physical) prepared by Dr. Bhirud because it is not well supported by medical findings, and it is inconsistent with the record as a whole." (Tr. at 19.) The ALJ reasoned that Dr. Bhirud, who has performed consultative examinations for the State agency, "advanced minimal clinical findings (tenderness and limited

12

range of motion in the lumbar spine) in support of severe functional limitations (such as never stooping). Dr. Bhirud's assessment reflects subjective complaints of the claimant as related in the treatment record; it is not supported by a record of the doctor's observations of the claimant's physical findings." (Tr. at 19.)

> The ALJ further explained that he gave

> some weight to the fact that Dr. Armbrust did not place any medical restrictions on the claimant's physical activity following his evaluation in October 2005 in view of the lack of medical evidence of a worsening in the claimant's lumbosacral condition since then. Dr. Armbrust's opinion is supported by a thorough examination, including review of the imaging studies, and the doctor's specialized training and experience in spinal surgery.

(Tr. at 20.) Finally, the ALJ stated that he gave significant weight to the concurring opinions of the State agency sources regarding Claimant's physical functional capacity. The ALJ explained that

> [a]lthough the consulting physicians did not examine the claimant, they provided specific reasons for their opinions about the claimant's functional limitations, showing that their opinions were well-grounded in the medical and other evidence of record, including a careful consideration of the allegations about the claimant's symptoms and limitations.

(Tr. at 20.)

The court proposes that the presiding District Judge find that the ALJ properly weighed the medical evidence of record, including the opinion of Dr. Bhirud, and his findings are in keeping with the

13

applicable regulations and caselaw and are supported by substantial evidence.  As the ALJ explains in his decision, Dr. Bhirud's opinions on the Assessment were not supported by medical findings, whether as stated in the Assessment itself or in Dr. Bhirud's treatment notes.  In addition, the other objective evidence of record, such as the MRIs, the opinion of Dr. Armbrust, a neurologist, and the opinions of the State agency sources, do not support Dr. Bhirud's limitations as opined on the Assessment.  While it is true that Claimant would have been found disabled under Rule 201.09 of the Medical-Vocational Guidelines if she were capable of only sedentary work, the substantial evidence of record does not support a finding that Claimant was so limited.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.09 (2007).

The court further proposes that the presiding District Judge find that the ALJ's pain and credibility analysis is consistent with the applicable regulation at 20 C.F.R. § 404.1529(b) (2007), and Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (July 2, 1996), and is supported by substantial evidence.

The ALJ determined that Claimant had produced evidence of a medically determinable impairment that could cause reasonably be expected to produce the symptoms alleged.  (Tr. at 18.)  The ALJ proceeded to the second step in the pain analysis, and his decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain

and other symptoms, precipitating and aggravating factors, Claimant's medication and side effects and treatment other than medication.  (Tr. at 18-19.)

The ALJ considered Claimant's subjective complaints, including low back pain radiating into her hips and legs, bilateral shoulder pain and bilateral knee pain.  The ALJ noted Claimant's testimony of constant pain ranging from a dull ache to more severe pain, which was exacerbated by standing, walking, bending and cold weather.  The ALJ acknowledged that Claimant's medications included Lortab, which took the edge off her pain.  Claimant took Flexeril, but it made her dizzy.  Claimant used other modalities to relieve her pain, including hot showers.  (Tr. at 18.)

The ALJ determined that Claimant's subjective complaints were not entirely credible for a number of reasons.  The ALJ explained that the objective medical evidence does not fully support Claimant's subjective complaints, noting that there is no imaging or clinical evidence of neural compromise.  In addition, he reasoned that "[t]he level and intensity of treatment does not support back pain of the severity alleged."  (Tr. at 18.) The ALJ further observed that "[t]he treatment record indicates that the claimant's low back pain has responded to conservative therapy." (Tr. at 19.) Regarding Claimant's complaints related to medication side effects, the ALJ stated that Claimant "alleges drowsiness and dizziness from these medications, but the treatment record does not

15

show that the claimant complained about any side effects. In fact, the claimant was maintained on Zanaflex in the past despite complaints that it made her sleepy (Exhibit 7F, n.b. pp. 11, 12)." (Tr. at 19.)

The ALJ's pain and credibility analysis is a thorough and well reasoned one supported by substantial evidence of record, and the court proposes that the presiding District Judge so find.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Summary Judgment, AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall

constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

 May 5, 2008 
        Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge